UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DIANE ZIMMERMANN,

                                                                           06 CIV 12970 (SCR)

                Plaintiff

vs

                                                          **FIRST AMENDED COMPLAINT**

HIGHLAND FALLS FORT MONTGOMERY
CENTRAL SCHOOL DISTRICT, PHILIP
ARBOLINO, sued in his individual capacity,

                Defendants.
------------------------------------------------------------X

       By and through her counsel, SUSSMAN & WATKINS, plaintiff hereby avers against Highland Falls Fort Montgomery Central School District (the District), her former employer, and Philip Arbolino, Superintendent of Schools:

       1.     Plaintiff was employed on September 1, 2003 by Highland Falls Fort Montgomery Central School District [hereinafter 'The District"] in the County of Orange, State of New York.

       2.     Defendant School District is a school district organized pursuant to the laws of the State of New York and it may sue and be sued pursuant to Title VII of the Civil Rights Act of 1964, as amended.

       3.     Defendant Philip Arbolino was Superintendent of Schools at all relevant times. As he was acting under color of state law, he may be sued in his individual capacity for violating plaintiff's First Amendment rights.

       4.     This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, and 1343 (3) & (4), 42 U.S.C. § 2000e, et. seq., as well as 42 U.S.C. § 1988.

5. Among other duties during the 2003-2004 school year, plaintiff was the District's Middle School librarian, taught 5th grade computer class and 5th and 6th grade library skills.

6. In addition to her librarian duties during the 2004-2005 school year, among other assignments, plaintiff taught math in the elementary and middle schools' academic intervention services programs, 6th grade social studies, 5th grade library skills, the Extended Day Program and advised the after school digital camera club.

7. As school librarian, plaintiff was assigned during the 2005-2006 school year to three of the District's four schools.

8. In addition to her librarian duties, plaintiffs 2005-2006 duties included, among others, teaching 5th and 6th grade library skills, monitoring 7th grade study hail, advising the digital camera and library clubs, and overseeing the School Store while monitoring hallways.

9. During the Fall 2005 semester, Principal Armstrong acknowledged to plaintiff that the District had not provided plaintiff with sufficient time to prepare for the five additional classes assigned her for the 2005-2006 school year.

10. Plaintiff frequently had to forgo lunch due to her heavy work schedule in each of the three buildings.

11. Plaintiff's assigned duties required her to teach students in 1st through 6th grades.

12. During 2005-2006, plaintiff was required to teach information skills to 20 different 6th grade and then 5th grade students each day, check books in and out for students, assist teachers and students with research and monitor students who were taking tests or completing missed assignments.

13. During the 2004-05 school year, principal Connors assured plaintiff that she was pleased with plaintiffs work and teaching skills.

14. During the 2004-2005 school year, Principal Connors informed plaintiff that she was a great teacher.

15. In the spring of 2005, Principal Connors informed plaintiff that a third classroom/teacher observation of plaintiff would not be necessary because she was doing a good job.

16. Principal Connors' secretary confirmed to plaintiff that Principal Connors had removed plaintiff's name from the observation list.

17. Several times between September 2004 and spring semester *2005,* inclusive, Principal Connors assured plaintiff that, due to her teaching skills and credentials, plaintiff should not worry about being awarded tenure.

18. From September 2005 through December 2005, inclusive, Principal Armstrong discussed with plaintiff plans for the 2006-2007 school year which included plaintiff being appointed head librarian, plaintiff training new library staff developing a literacy skills program and working on curriculum mapping for the elementary schools.

19. On December 23, 2005, Superintendent Arbolino approached plaintiff for the first time since his hiring the prior summer and told her, without preface, "You better take care of your health."

20. On January 9, 2006, Principal Connors announced at the faculty meeting that "Mrs. Munderville was calling in sick and that she has a lawyer."

21. During the week of January 9, 2006 and following Principal Connors' announcement, Dr. Lamb refused to schedule plaintiffs next teacher observation until she asked Dr. Arbolino to approve such scheduling.

22. During that same conversation, Dr. Lamb informed plaintiff that she didn't know about plaintiffs tenure because the new superintendent could change things.

23. On January 13, 2006, Superintendent Arbolino summoned plaintiff to his office for a meeting.

24. During the meeting, the School District's attorney, Robert Cohen, asked plaintiff several questions about her knowledge of a complaint of sexual harassment by non-tenured teacher, Ms. Tabitha Munderville, against Dean of Students and Athletic Director, Keith Abbey.

25. During the meeting, plaintiff described occasions when she witnessed Mr. Abbey with Ms. Munderville.

26. During the meeting, plaintiff described Mr. Abbey as "flirting with Ms. Munderville."

27. During the meeting, plaintiff described Ms. Munderville's express discomfort with Mr. Abbey's attentions and Ms. Munderville's request that plaintiff make her presence known when Mr. Abbey was with Ms. Munderville.

28. During the meeting, plaintiff described Ms. Munderville's request that plaintiff walk with her in the hallways in order to deter Mr. Abby from accompanying her.

29. During the meeting, plaintiff stated that she'd told Ms. Munderville that she believed Mr. Abby was "playing games with her."

30. Shortly after the meeting a teacher, Tim Smith, approached plaintiff and told her, "Mrs. Connors is looking for you and you're going to be fired."

31. Later that same day, Smith told plaintiff that "Tabitha Munderville is going to be fired because she is a non-tenured teacher who is suing the school district."

32. Smith informed plaintiff that "Tabitha Munderville had named him in a lawsuit."

33. Plaintiff sent a letter, dated January 13, 2006, to Dr. Arbolino in which she related the opinions of colleagues that Mr. Abbey had evidenced inappropriate behavior with female teachers before Ms. Munderville was hired by the District.

34. In her January 13, 2006 letter, plaintiff stated that she felt concern for Ms. Munderville's well being when Mr. Abbey displayed such "similar interests" in Ms. Mundervile.

35. In her January 13, 2006 letter, plaintiff expressed a colleague's concern and her own that Mr. Abbey sexually harassed Ms. Munderville and was allowed to continue as Dean of Students while Ms. Munderville faced consequences.

36. During the week of January 17, 2006, Principal Connors told plaintiff to come to her office.

37. Principal Connors accused plaintiff of telling another teacher, Ms. McCormick, what had occurred during plaintiff's meeting with Superintendent Arbolino.

38. Principal Connors told plaintiff that she should not talk with Ms. Munderville.

39. Subsequent to plaintiff's January 13, 2006 meeting with Superintendent Arbolino, Principal Armstrong began treating plaintiff with open hostility.

40. After one such hostile encounter with Principal Armstrong, plaintiff discussed the matters raised by Principal Armstrong with Principal Lamb.

41. Shortly after another hostile encounter with Principal Armstrong, plaintiff began experiencing sharp pains on the right side of her head and migraines.

42. Plaintiff sought and received treatment for the pain from her physician Dr. Mayles.

43. On April 24, 2006, plaintiff received a letter from Superintendent Arbolino requesting a meeting with plaintiff and informing her that she might want to have a union representative accompany her to the meeting.

44. On April 27, 2006, Superintendent Arbolino informed plaintiff that she was being denied tenure and was being terminated.

45. During the April 27, 2006 meeting, Superintendent Arbolino informed plaintiff he was concerned about "...things that have happened with certain individuals when you've meddled. That was a big concern I have. Your meddling was detrimental to others."

46. Plaintiff's NYSUT Union representative told her that if her tenure was denied because of the Munderville case, the union would represent her.

47. On April 27, 2006, Superintendent Arbolino recommended at the Board of Education meeting that plaintiff be denied tenure.

48. Subsequent to the Superintendent's recommendation on April 27, 2006, several teachers and two of plaintiff's building principals stopped talking to her.

49. During the week of May 1, 2006, several students began circulating a petition in opposition to the District's termination of plaintiff.

50. On May 2, 2006, plaintiff received a letter from Superintendent Arbolino in which he told her he must receive a letter of resignation from her by May 15, 2006.

51. On May 8, 2006, Principal Armstrong confronted plaintiff in a hostile and rude manner.

52. While still with Principal Armstrong, plaintiff experienced a sharp pain in her head, facial numbness and dizziness.

53. On May 11, 2006, Dr. Frontera determined that plaintiff was totally disabled.

54. On May 30, 2006, plaintiff was informed by a colleague in the District that the District was planning to dispose of plaintiff's belongings and that plaintiff should make arrangements to retrieve them.

55. The District's teacher/classroom evaluations of plaintiff prior to January 13, 2006 were generally positive, laudatory and contained only minor suggestions for improvement.

56. The basis for plaintiff's termination was pretextual and defendants terminated her in retaliation for her participation in and support of Ms. Tabitha Munderville's sexual harassment complaint against the District in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the First Amendment to the United States Constitution, as made actionable by 42 U.S.C. § 1983.

57. Defendant Arbolino recommended plaintiff's termination in retaliation for her truthful speech regarding gender discrimination against her fellow teacher, Mrs. Munderville, in violation of the First Amendment.

58. The Board of Education followed Arbolino's recommendation with full knowledge of its retaliatory basis, thereby ratifying the violation of plaintiff's First Amendment rights.

59. Arbolino and the Board of Education had final policymaking authority with respect to plaintiff's termination. Moreover, Arbolino and the Board of Education adopted a policy of unlawful retaliation in the Munderville matter by firing both plaintiff and Tabitha Munderville.

60. Plaintiff timely filed a complaint with the EEOC and has received a right to sue letter. She has instituted this matter within 90 days of receipt of that letter.

61. Plaintiff has been severely damaged by defendants' retaliatory conduct, suffering medical and emotional consequences, as well as financial hardship.

62. Defendants' conduct was intentional, spiteful and intended to shield violations of federal civil rights law.

WHERFORE, PLAINTIFF prays that this Honorable Court accept jurisdiction over this matter, award to plaintiff compensatory and punitive damages with pre- and post-judgment interest, as permitted by statute, order defendants to reinstate plaintiff to her former position with tenure, order defendants to pay the attorneys fees and litigation costs incurred by plaintiff and order any other relief it deems just and equitable.

Dated: April 9, 2007
Goshen, New York

Respectfully submitted,

Christopher D. Watkins (CW 2240)
Counsel for plaintiff
SUSSMAN & WATKINS
P0 Box 1005
40 Park Place
Goshen, New York 10924
(845) 294-3991