UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

DIANE ZIMMERMANN,

                    Plaintiff,                     06 CV 12970 (CLB)

         -against-                        **DEFENDANTS'**
                                          **STATEMENT OF**
HIGHLAND FALLS FORT MONTGOMERY     **UNDISPUTED**
CENTRAL SCHOOL DISTRICT, PHILIP        **MATERIAL FACTS**
ARBOLINO, sued in his individual capacity,   **PURSUANT TO LOCAL**
                                          **CIVIL RULE 56.1**

                    Defendants.

_____

      Defendants Highland Falls Fort Montgomery Central School District ("School District") and

Philip Arbolino, sued in his individual capacity, submit the following statement of undisputed

material facts pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for

the Southern District of New York and Fed. R. Civ. P. 56(d):

**STATEMENT OF FACTS**

      1.      Plaintiff commenced the instant action by filing a Complaint on or about November

7, 2006. Subsequently, plaintiff filed and served a First Amended Complaint dated April 9, 2007,

[Ex. A], which the defendants answered by Answer to First Amended Complaint dated May 14,

2007. [Ex. B]. Plaintiff had previously filed an EEOC complaint on June 16, 2006. [Ex. C]. By

correspondence dated September 13, 2006, the EEOC issued a dismissal and Notice of Right to Sue.

[Ex. D]. Therein, the EEOC investigator wrote, "it is very unlikely that EEOC would find a

violation if it invested additional resources in this case and is terminating the administrative

processing of this charge." [*Id.*].

      2.      Plaintiff commenced her employment with the School District on or about September

1, 2003. [Ex. E at 14].

3.      As a probationary employee, plaintiff would become eligible for tenure appointment no earlier than September 1, 2006. [Ex. E at 53].

4.      During the 2003-2004 school year, plaintiff was employed as the librarian at the Highland Falls Middle School ("Middle School"), where she taught Library Science to fifth and sixth grade students, as well as a fifth grade computer class. [Ex. E at 31].

5.      During the 2003-2004 school year, Dr. Maureen Lamb was principal of the Middle School, and was responsible for observing and evaluating plaintiff. [Ex. E at 32; Ex. F].

6.      During the 2004-2005 school year, plaintiff continued as librarian at the Middle School, where she taught fifth and sixth grade Library Science. [Ex. E at 32].  She also taught academic intervention in the elementary school, ran the digital camera club and started up the school store. [Id. at 32-33].  In addition, in February 2005 plaintiff was named as a replacement social studies teacher. [Id. at 32].

7.      During the 2004-2005 school year, Ellen Connors was principal of the Middle School, and was responsible for observing and evaluating plaintiff during that year. [Ex. E at 33-34].

8.      On January 14, 2005, Principal Connors conducted an observation of plaintiff's fifth grade Library Skills class. [Ex. G].  In the "performance areas in need of improvement" section of the Classroom Observation Report, Principal Connors wrote:

> Remember to use "wait time" when questioning your students, especially when in a whole group situation.  It may be helpful to devise a system for students to ask and answer questions.  The type and level of questions is of great importance when trying to encourage higher order thinking.  Provide opportunities for students to ask students questions and to gain insight from one another.

[Id.].  Principal Connors also wrote, "[a]lthough learning was monitored to some degree, it would be beneficial if there were a systematic way for students to ask questions throughout the whole group

portion." [*Id*.].

9.     On April 18, 2005, Principal Connors again observed plaintiff, while plaintiff was conducted a grades 5-8 Library Skills class. [Ex. H].  As set forth in the Classroom Observation Report, Principal Connors again reported that performance improvement was needed, as she wrote, in the "classroom management" section, "[i]t appeared that students had a difficult time keeping up with all the information that they were receiving.  A few times throughout the lesson you had to speak over the students who were talking while you were.  This impacted their level of engagement." [*Id*.].

10.     Plaintiff testified at her deposition that when Principal Connors met with her about the April 18, 2005 observation, Principal Connors told her she "needed to wait a little longer before I picked on a student to answer the question in case there were other students who were shy to answer the question, and she explained it to me as wait time." [Ex. E at 44].

11.     During the 2005-2006 school year, plaintiff was assigned to work in the Middle School as well as the Highland Falls Elementary School and the Fort Montgomery Elementary School. [Ex. E at 55].  She also oversaw the digital camera club and school store, and started a library club. [*Id*.].

12.     Each of the principals at the three schools, including Principal Connors at the Middle School, Dr. Lamb at the Fort Montgomery Elementary School and Principal Christine Armstrong at the Highland Falls Elementary School, completed classroom observation reports, teacher evaluations and recommendation for tenure reports regarding the plaintiff for the 2005-2006 school year. [Ex. E at 55-56, 60; Exs. I - K, M - Q].

13.     On October 25, 2005, Principal Connors conducted an observation of plaintiff's fifth grade Library Skills class. [Ex. I]. In the "classroom management" section of her report, Principal Connors wrote, "[s]tudents need to observe appropriate behaviors so learning can be maximized. Using 'wait time' during a whole class discussion is valuable.  The opening and closing activities are critical to the success of a lesson." [*Id.*].  In the "performance areas in need of improvement" section, Principal Connors wrote:

> Since these students come only once every four days it is necessary to review and refine your student management strategies. . . . During classroom discussions, please try and engage all students by calling on as many as possible.  There were a couple of students who dominated the discussion and others began to disengage.

[*Id.*].

14.     At her deposition, plaintiff testified that Principal Connors "said that everything in the lesson went well other than I just still needed to not  -- there were some students that know all the answers and they always raise their hands, and that I really needed to wait more to see if other shy students, it was basically the same thing from the year before . . . ." [Ex. E at 67].

15.     On November 9, 2005, Principal Armstrong undertook a formal observation of plaintiff's fourth grade Library Skills class. [Ex. J].  In her report, Principal Armstrong noted that the areas of classroom management and techniques of instruction were in need of some improvement. [*Id.*].  In particular, in the "classroom management" section, Principal Armstrong wrote that, "[t]he students were somewhat distracted and inattentive when [plaintiff] was giving directions." [*Id.*].  In the "techniques of instruction" section, Principal Armstrong wrote that plaintiff's decision to give the instructions while worksheets were handed out "confused some students."  She further wrote that:

-4-

> One whole group was ready to go on to the next page and did so before they were told to do so.  It seemed as though not all the information on the first page was gone over and checked, leaving some students unsure about their answers.  The last page was more difficult and time ran out before it was assessed.

[*Id*.].

16.     In the November 9 report, Principal Armstrong offered the plaintiff a number of written recommendations to address these issues, including that, "[t]he directions should have been given once all the students received their packets, rather than as they were receiving them," that "more attention should have been paid to the final products, as some students were finished and some not," that "there could have been some kind of reward for not only finishing quickly, but for being correct," that "[i]t might also have been effective to have the students read the directions on the pages to make sure that all understood what needed to be done," and "it would have been better to go over the words in the word box before the students began the page, so that they knew what they were writing." [*Id*.].  Principal Armstrong concluded, "I'm confident that Mrs. Zimmermann will do all she can to improve." [*Id*.].

17.     On January 30, 2006, Principal Lamb prepared a written classroom observation report regarding plaintiff's second grade Library Skills class. [Ex. K]. Dr. Lamb's report was generally positive, although in the "performance areas in need of improvement" section, she wrote:

> When you sent the children to the individual computers, you could have demonstrated how to play the games.  They were very interested but they needed specific directions to be able to play themselves.  With this age child more explanation and demonstration is better to make them more independent.

[*Id*.].

18.     During the 2005-2006 school year, Superintendent Arbolino undertook unofficial evaluations of the plaintiff in the Middle School. [Ex. L at 17-21].  Regarding the first observation,

Dr. Arbolino testified, "as best as I can recollect, it wasn't anything major as a concern as much as I saw just some idea that I expected maybe her to be more involved as a librarian with the students, and just a concern that there was disconnect with her and the students." [*Id.* at 19].  Regarding the second observation, Dr. Arbolino testified, "I put my head in the library, and there was just a lot of confusion, and by that I mean, kids were literally just in the library going in and out.  There was no accountability of who was coming in, who is staying, who was supposed to be in there, what was supposed to be going on." [*Id.* at 20].

19.     On March 29, 2006, Principal Connors prepared a Recommendation for Tenure report. [Ex. M].  Therein, she checked the "meets expectations" box 18 times and checked the "does not meet expectations" box ten times, including all six boxes in the "Classroom" category. [*Id.*].  Principal Connors wrote:

> While Ms. Zimmermann is very knowledgeable in the area of Library Science and the position of a Media Specialist, her application of theory and practice in light of student learning is quite weak.  She has an understanding of what students should know and be able to do, yet her difficulties with managing the classroom serve as an obstacle for learning.  We have addressed these student management issues for the past two years, specifically the need for consistent routines and procedures.  In my opinion, there has been little improvement in this critical area.  It is with regret, that I cannot recommend Mrs. Zimmermann for a tenure appointment; however, the decision has been made in the future interests of our students and the library program.

[*Id.*].

20.     Also on March 29, 2006, Dr. Lamb prepared her Recommendation for Tenure report. [Ex. N].  Therein, Dr. Lamb check all of the "meets expectations" boxes, although with certain notes included therein, such as, "[n]eeds more time on task for younger children," "needs more emphasis on . . . younger children," "could be more organized in providing time on task for students," and "does not really know the children well enough." [*Id.*].  In the "recommendation" section, Dr. Lamb

-6-

wrote:

> Dianne Zimmerman was hired as library specialist for the Middle School when I was the Principal there. It took her some time to establish herself in the new library and to get to know that students. She was definitely better with the 5th grade students than with the older students for organized classes. She did relate well with individual older students who helped out in the library. I did not work with her for a year after that and then this year we involved her in the libraries of the elementary schools to get them on track and up to standard. As a storyteller she has worked well with the youngest students. She is very entertaining as she reads to the children. When she does media lessons with the children she had not yet mastered adjusting the material and approach to their level. When I observed Diane, I commented that she needs to provide more demonstration and explanation of directions for the students to be able to explore the Internet sites on their own. If Diane were only centered on the youngest children in the district I would certainly recommend her for tenure. However, her job embraces the K-8 ages with more emphasis on the older students. It is more appropriate that the full recommendation come from that level.

[*Id*.].

21.     On March 31, 2006, Principal Armstrong prepared a Recommendation for Tenure report. [Ex. O]. Like Principal Connors' report, Principal Armstrong's report noted deficiencies in plaintiff's classroom performance, and that plaintiff did not meet expectations in several areas, including planning, techniques of instruction, interpersonal skills and classroom management. [*Id*.]. Specifically, Principal Armstrong wrote:

> Mrs. Zimmermann exhibits a basic lack of classroom management skills. Students in her library classroom are seldom productively occupied os there is often time to fool [around]. While she prepares what seem to be excellent lessons, these lessons often fail to stimulate and motivate so there is not active engagement. As an administrator and as a colleague, I made many attempts to remedy these problems, with little to no improvement. She has attended in-service classes for best practices and has attempted to change and improve but with no appreciable difference. Students in the 3rd and 4th grade can and should be enjoying library in an educational manner, but this is not often the case. Her lessons are not always age appropriate – sometimes way below or way above the specified level of learners. Also, though she seeks to find interesting Internet sites, there is often not connected with the current classroom curriculum. On a whole, these inefficiencies and lack of skills tend to create an unsafe and unproductive classroom environment. At this time, I feel it

would be inappropriate and unwise to grant her tenure.

[*Id*.].

22.    In a separate document dated March 10, 2006, Principal Armstrong wrote:

Diane's weakness lies in her inability to manage larger groups effectively.  In groups larger than 5 or 6, Diane is unable to actively engage students so they often seek other activities that often lead to disruption and student misbehavior.  Even with the younger students, this unstructured environment is detrimental and comes back into the regular classroom to be handled.  These issues have been brought to Diane's attention and she has attempted to address them.  However, at this time, little has changed.

[Ex. P].

23.    All three principals also prepared teacher evaluations near the end of the 2005-2006 school year. [Ex. Q].  Their evaluations were consistent with their prior classroom observation reports and tenure recommendation reports. [*Id*.].

24.    On or about April 24, 2006, plaintiff received a note from Joanne DiBlasi, administrative assistant to the superintendent, advising that she was to meet with Dr. Arbolino on April 27, 2006, and further advising her to bring a union representative with her to the meeting. [Ex. R].

25.    On or abut April 27, 2006, plaintiff met with Dr. Arbolino. [Ex. E at 114-23]. Also present were Ms. DiBlasi, Mike Mallon, the School District's union representative, and Wayne Bardua, plaintiff's building representative. [Ex. E at 117].  At that time, Dr. Arbolino informed plaintiff of his intention to recommend to the Board of Education not to grant tenure to the plaintiff. [Ex. E at 114].  Dr. Arbolino also offered plaintiff the opportunity, both at the April 27, 2006 meeting and in writing thereafter, to resign, rather than be denied tenure. [Ex. E at 121-22; Ex. S]. Plaintiff declined the offer, both at the meeting and in writing. [Ex. E at 122, 130; Ex. T].

-8-

26.     By correspondence dated May 19, 2006, Dr. Arbolino informed plaintiff of his intention to make a recommendation to the Board of Education, pursuant to Section 3031 of the Education Law, not to grant tenure to the plaintiff. [Ex. U].

27.     The last date on which plaintiff worked was May 5, 2006. [Ex. E at 10, 140]. Plaintiff testified that, on May 2, 2006, "I injured my back at the Fort Montgomery School lifting some boxes to make a fire exit path and hurt my back and wound up in the emergency room that evening." [*Id*. at 142, 170-71]. Plaintiff testified that she returned to work on May 5, 2006, because she felt better, but went home when her back began to hurt again. [*Id*. at 142-44]. She never returned to work at the School District. [*Id*.].

28.     Plaintiff claims that she was placed on disability because "I have physical with my spine and posttraumatic stress from the employment at the school district." [Ex. E at 10, 191]. At her deposition, dated January 10, 2008, plaintiff testified that she was unable to work as of that date "because I'm not well enough yet." [Ex. E at 56-57]. Plaintiff further testified, at the second session of her deposition, dated February 13, 2008, as follows:

Q.      If your only injuries were the back and neck injuries, would you presently be able to work as a teacher?

A.      Not at this time.

Q.      Why is that?

A.      I've not received adequate physical rehabilitation to be told to go back to work by my doctors yet.

[*Id*. at 192].

29.     On or about May 22, 2006, the Board of Education reviewed and considered Dr. Arbolino's recommendation not to confer tenure upon plaintiff. [Ex. V]. Plaintiff testified that she

first received notice that her termination would be effective June 30, 2006, but that, because she was not given 30 days' notice, the effective termination date was changed to August 30, 2006. [Ex. E at 126-27].

30.     By correspondence dated July 13, 2006, Dr. Arbolino informed plaintiff that he intended to recommend to the Board of Education, at its July 27, 2006 meeting, that plaintiff's position be terminated effective August 30, 2006. [Ex. DD].  Dr. Arbolino further wrote, "[t]he primary cause for my non-tenure recommendation to the Board of Education is your lack of classroom management and subsequent failure to follow-up with the appropriate student discipline." [*Id*.]  On July 27, 2006, the Board of Education approved the termination of plaintiff, effective August 30, 2006. [Ex. W].

31.     In December 2005, Tabitha Munderville, another teacher then employed by the School District, was called to a meeting with Principal Connors regarding issues pertaining to her conduct, at which time Ms. Munderville complained to Principal Connors that she was being sexually harassed by another employee within the School District. [Ex. X].

32.     On or about January 2, 2006, Ms. Munderville's counsel submitted correspondence to Superintendent Arbolino regarding her complaints. [Ex. Y].

33.     As a result, pursuant to School District policy, the School District commenced an investigation of Ms. Munderville's complaints. [Exs. X, Z].

34.     On or about January 12, 2006, plaintiff was asked questions by Robert Cohen, an attorney with the firm of Lamb & Barnosky, LLP, as part of the School District's investigation. [Ex. E at 66, 96-99; Ex. X at 9-10].  Also present at the meeting were Superintendent Arbolino and Wayne Bardua, plaintiff's union representative. [*Id*.].

35. On or about January 13, 2006, plaintiff submitted correspondence to Dr. Arbolino, which she copied to Kim Tiffany, plaintiff's acting union representative, regarding the meeting of the prior day and regarding Ms. Munderville's claims. [Ex. AA].

36. Ms. Munderville commenced an action in the United States District Court, Southern District of New York, on or about April 25, 2006, in the matter captioned *Tabitha Munderville v. Highland Falls-Fort Montgomery Central School District, Phillip Arbolino, sued in his individual capacity, and Keith Abbey, sued in his individual capacity*, Civil Action No. 06 Civ. 3156 (KMK). [Ex. BB].

37. The Munderville action is active, with defendants' motion for summary judgment pending. [Ex. EE]. Ms. Munderville is represented by the same counsel as plaintiff herein, and the defendants in the Munderville action are represented by the same counsel as defendants herein. [*Id.*].

Dated: Hawthorne, New York
       May 30, 2008

**TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP**

By: _____/s_____
       Lisa L. Shrewsberry (LS1597)
       Daniel G. Ecker (DE2017)
       Attorneys for Defendants
       Highland Falls Fort Montgomery Central
         School District and Philip Arbolino
       Mid-Westchester Executive Park
       Seven Skyline Drive
       Hawthorne, New York 10532
       (914) 347-2600

-11-